**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>RENESAS ELECTRONICS CORPORATION,<br><br>        Defendant. | Civil Action No. 2:25-cv-01257<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Renesas Electronics Corporation ("Renesas" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 7,177,285 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285,<br><br>https://patentcenter.uspto.gov/applications/10961959 |
| 2. | 7,463,596 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596,<br><br>https://patentcenter.uspto.gov/applications/11673513 |
| 3. | 7,911,979 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979,<br><br>https://patentcenter.uspto.gov/applications/12323399 |

|     | Patent No. | Reference |
| --- | --- | --- |
| 4. | RE44,904 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904, <br><br> https://patentcenter.uspto.gov/applications/13171882 |
| 5. | 7,027,465 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465, <br><br> https://patentcenter.uspto.gov/applications/10167986 |
| 6. | 6,891,807 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807, <br><br> https://patentcenter.uspto.gov/applications/10341847 |
| 7. | 9,554,304 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9554304, <br><br> https://patentcenter.uspto.gov/applications/14090760 |

2.    Plaintiff seeks monetary damages.

## PARTIES

3.    CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.    On information and belief based upon public information, Defendant Renesas Electronics Corporation is a foreign company organized and existing under the laws of Japan, and has a principal place of business at Toyosu Foresia, 3-2-24 Toyosu, Koto-ku, Tokyo 140-0061, Japan.

5.    On information and belief, Renesas has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

6.    CommWorks repeats and re-alleges the allegations in paragraphs 1-5 above as though

fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, in the State of Texas and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

9.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through its inducement of third parties, and offering its products or services, including those accused of infringement here, to customers and potential customers located in this District.

10.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel, with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from

which Defendant derives substantial revenue from goods sold to residents and consumers.

11.     Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendant has committed acts of infringement in the Eastern District of Texas, has conducted business in the Eastern District of Texas, and/or has engaged in continuous and systematic activities in the Eastern District of Texas.

12.     Venue is proper in this judicial pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

13.     Defendant has not contested the propriety of venue in this District for patent infringement actions. *See Xueshan Technologies Inc. v. Renesas Electronics Corporation*, 2:22-cv-00157-JRG-RSP, Dkt. No. 10, at ¶ 16 (E.D. Tex. Aug. 16, 2022); *Xueshan Technologies Inc. v. Renesas Electronics Corporation*, 2:23-cv-00091-JRG-RSP, Dkt. No. 13, at ¶ 16 (E.D. Tex. Aug. 1, 2023); *Winterspring Digital LLC v. Renesas Electronics Corporation*, 2:23-cv-00025-JRG-RSP, Dkt. No. 16 (E.D. Tex. Aug. 29, 2023) (Renesas filing motion to dismiss solely under Rule 12(b)(6)).

## THE ACCUSED PRODUCTS

14.     CommWorks repeats and re-alleges the allegations in paragraphs 1-13 above as though fully set forth in their entirety.

15.     Defendant uses, causes to be used, manufactures, provides, supplies, or distributes one or more Renesas Systems-on-Chips (SoCs), and/or devices, including, but not limited to the

"Accused Products," set forth below:

- Renesas SoCs and/or devices supporting **Wi-Fi Multimedia and 802.11-2007+** functionality (the "Renesas Wi-Fi Multimedia Products"), which include but are not limited to:

  o Renesas CL8000 Product family

    ▪ CL8080,

    ▪ CL8060,

    ▪ CL8040,

    ▪ CL8066, and

    ▪ CL8046,

  o DA16200,

  o CL1830 Reference design (VXT1830),

  o CL2430,

  o CL2432,

  o CL2440,

  o CL2442,

  o DA16200MOD-AAC

    ▪ WFA97877 – 10929108,

    ▪ WFA97876 – 10928885,

    ▪ WFA97877 – 10914280,

    ▪ WFA97876 – merged, and

    ▪ WFA97876 – 10914180,

  o DA16200MOD-AAE

    ▪ WFA97879 – 10929172,

- WFA97878 – 10928988,

- WFA97879 – 10914446,

- WFA97878 – merged, and

- WFA97878 - 10914348), and

o DA16600MOD-AAC4WA32

- WFA102341 – merged,

- WFA102342 – 11714630, and

- WFA102341 – 11714497.

- Renesas devices/chips supporting **Wi-Fi Protected Setup (WPS)** functionality (the "Renesas WPS Products") which include but are not limited to:

  o Renesas DA16200,

  o DA16200MOD,

  o DA16600MOD,

  o CL1830 Reference design (VXT1830),

  o Pmod Board

    - US159-DA16600EVZ, and

    - US159-DA16200MEVZ,

  o FC9000, and

  o PE-HMI1.

- Renesas chips supporting **Wi-Fi Mesh** functionality (the "Wi-Fi Mesh Products") which include but are not limited to:

  o DA16200; and

  o DA16200MOD.

16.     On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

17.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,177,285</u>

18.     CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

19.     For purposes of this Count, the term "Accused Products" shall mean Renesas chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Renesas WPS Products.

20.     The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

21.     CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

22.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

23.     The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.  The written description of the '285 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

25.    The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49.  The invention of the '285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start

of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

26.     Defendant has directly infringed one or more claims of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

27.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent, as detailed in **Exhibit A** (Evidence of Use Regarding U.S. Patent No. 7,177,285).

28.     On information and belief, Defendant has infringed one or more claims of the '285 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Renesas WPS Products.

29.     For example, as detailed in Exhibit A, Defendant has infringed at least claim 1 of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network. The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device. *Id.* The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval. *Id.*

30.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,463,596</u>

31.     CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

32.     For purposes of this Count, the term "Accused Products" shall mean Renesas chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Renesas WPS Products.

33.     The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007.  The '596 patent is entitled "Time Based Wireless Access Provisioning."

34.     CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

35.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent.

36.     The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

37.    The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

39.    The invention of the '596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '596 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49.  The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily

monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '596 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

40.    Defendant has directly infringed one or more claims of the '596 patent by making, using, offering to sell, selling, and/or importing the Renesas WPS Products identified above.

41.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).

42.    On information and belief, Defendant has infringed one or more claims of the '596 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Renesas WPS Products.

43.    For example, as detailed in Exhibit B, Defendant, using the Accused Products, has infringed at least claim 1 of the '596 patent by making, using, offering to sell, selling, and/or importing the Renesas WPS Products, which perform a process for associating devices.  The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The process for associating devices further comprises the step of automatically associating the first device with at least one

other device if the tracked operating parameter occurs within a time interval.  *Id.*

44.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,911,979</u>

45.    CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

46.    For purposes of this Count, the term "Accused Products" shall mean Renesas chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Renesas WPS Products.

47.    The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008.  The '979 patent is entitled "Time Based Access Provisioning System And Process."  A Certificate of Correction was issued on July 19, 2011.

48.    CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

49.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

50.    The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting network provisioning systems.

51.     The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

52.     For example, at the time of the invention wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

53.     The invention of the '979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:42-46.  The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.

*Id.* at col. 3:47-53.  The invention of the '979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

54.    Defendant has directly infringed one or more claims of the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

55.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).

56.    On information and belief, Defendant has infringed one or more claims of the '979 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Renesas WPS Products.

57.    For example, as detailed in Exhibit C, Defendant, using the Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic.  The provisioning process performed comprises

tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval.  *Id.*

58.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. RE44,904</u>

59.    CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

60.    For purposes of this Count, the term "Accused Products" shall mean any Renesas chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the Renesas Wi-Fi Multimedia Products.

61.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

62.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

63.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

64.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

65.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10.  Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 2:5-8.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:20-25.

67.    The invention of the '904 patent improved upon conventional network traffic routing

systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:62-65. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

68.    Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

69.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

70.    On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia

("WMM") and/or 802.11-2007+ compatible chips, such as, for example, the Renesas Wi-Fi Multimedia Products.

71.     For example, as detailed in <u>Exhibit D</u>, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame.  The method further comprises comparing said extracted bit pattern with a search pattern. *Id.*  The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.* The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  *Id.* The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.  *Id.*

72.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. 7,027,465</u>

73.     CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

74.     For purposes of this Count, the term "Accused Products" shall mean any Renesas chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the Renesas Wi-Fi Multimedia Products.

75.     The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11,

2002.  The '465 patent is entitled "Method For Contention Free Traffic Detection."

76.     CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

77.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

78.     The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

79.     The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex

tunneling protocols. *Id.* at col. 1:62-65. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 1:66-2:4. Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:11-15.

81.     The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

82.     Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

83.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

84.    On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia (WMM) and/or 802.11-2007+ compatible chips and devices, such as, for example, the Renesas Wi-Fi Multimedia Products.

85.    For example, as detailed in Exhibit E, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network.  The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame.  *Id.*  The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern.  *Id.*  The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.* In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame.  *Id.*

86.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 6,891,807

87.    CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though

fully set forth in their entirety.

88.     For purposes of this Count, the term "Accused Products" shall mean Renesas chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the Renesas WPS Products.

89.     The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003.  The '807 patent is entitled "Time Based Wireless Access Provisioning."

90.     CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

91.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

92.     The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

93.     The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     For example, at the time of the invention, wireless access to data networks was not yet

conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '807 patent at col. 3:5-18.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:19-28.

95.    The invention of the '807 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:29-33.  The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:34-41.  The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:42-50.  Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the

invention.

96.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent, as detailed in **Exhibit F** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,891,807).

97.    On information and belief, Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible consumer electronics chips, such as, for example, the Renesas WPS Products.

98.    For example, as detailed in Exhibit F, Defendant has infringed at least claim 17 of the '807 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which include a time based network access provisioning system between a wireless device and a network.  The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device.  *Id.*  The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval.  *Id.*

99.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 9,554,304

100.    CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

101.    For purposes of this Count, the term "Accused Products" shall mean Renesas chips, SoCs, and/or devices supporting Wi-Fi Mesh functionality, including, for example, the Wi-Fi Mesh Products.

102.    The USPTO duly issued U.S. Patent No. 9,554,304 (the "'304 patent") on January 24, 2017, after full and fair examination of Application No. 14/090,760 which was filed on November 26, 2013.  The '304 patent is entitled "Scalable Media Access Control for Multi-Hop High Bandwidth Communications."

103.    CommWorks owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

104.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

105.    The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

106.    The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

107.    For example, at the time of the invention wireless communications and scalable

medium access control ("MAC") modules for use in multi-hop wireless network communications over high bandwidth network communication channels was impractical.  Existing technologies could only be carried out locally and failed to account for end-to-end resource allocation. '304 patent, at 1:62-67; 3:7-9.  This led to a significant increase in communication errors because the routing protocols unknowingly selected routing paths without enough resources.  *Id.* at 3:9-15.

108.    The invention of the '304 patent improved upon MACs by providing wireless network meshes that avoided conflict resource reservation to prevent degradation of network performance as the number of hops or nodes increased in the network.  *Id.* at 3:19-22.  This resource allocation is also performed together with routing to achieve layer-2 routing within the MAC protocol to ensure optimal performance in both routing and the MAC layer.  *Id.* at 3:36-40.  Further, these meshes allowed the MAC to be compliant with both WiMedia MAC and IEEE 802.15.3 MAC, for seamless integration in the industry.  *Id.* at 3:30-33.

109.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '304 patent, as detailed in **Exhibit G** to this Complaint (Evidence of Use Regarding U.S. Patent No. 9,554,304).

110.    On information and belief, Defendant has infringed one or more claims of the '304 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States such as, for example, the Wi-Fi Mesh Products.

111.    For example, as detailed in Exhibit G, Defendant, using the Accused Products, has infringed at least claim 1 of the '304 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method comprising receiving a beacon signal from a wireless communication network, wherein the beacon signal includes information about a

sender node and network synchronization information.  The receiving a beacon signal process comprises adding the sender node to a neighbor list.  *Id.*  The receiving a beacon signal process further comprises determining a signal quality for the beacon signal from the sender node.  *Id.*  The receiving a beacon signal process further comprises establishing a wireless communication link with the sender node if the determined signal quality meets a predetermined threshold quality level. *Id.*

112.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

## JURY DEMAND

113.    CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

114.    CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b.    Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c.    Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    d.   That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

    e.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>December 30, 2025</u>                    Respectfully submitted,

                                                      By:*/s/ James F. McDonough, III*

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

***Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC***

                                  * Admitted to the Eastern District of Texas

**List of Exhibits**
    A.  Evidence of Use Regarding U.S. Patent No. 7,177,285
    B.  Evidence of Use Regarding U.S. Patent No. 7,463,596
    C.  Evidence of Use Regarding U.S. Patent No. 7,911,979
    D.  Evidence of Use Regarding U.S. Patent No. RE44,904
    E.  Evidence of Use Regarding U.S. Patent No. 7,027,465
    F.  Evidence of Use Regarding U.S. Patent No. 6,891,807
    G.  Evidence of Use Regarding U.S. Patent No. 9,554,304

**Attachments**
- Civil Cover Sheet
- Proposed Summons